Argued and submitted December 16, 1988, affirmed March 8, reconsideration denied April 28, petition for review pending 1989

# MID-COUNTY FUTURE ALTERNATIVES COMMITTEE et al,
*Appellants,*

*v.*

# CITY OF PORTLAND et al,
*Respondents.*

(A8711-06867; CA A48513)

770 P2d 604

Gregory W. Byrne, Portland, argued the cause and filed the briefs for appellants.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondents Portland Metropolitan Area Local Boundary Commission and State of Oregon. With him

on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Linda DeVries Grimms, Assistant Attorney General, Salem.

Jeffrey L. Rogers, City Attorney, Portland, argued the cause for respondent City of Portland. With him on the brief was Adrianne Brockman, Deputy City Attorney, Portland.

Matthew R. Baines, Assistant City Attorney, Gresham, argued the cause for respondent City of Gresham. With him on the brief was Thomas Sponsler, City Attorney, Gresham.

Laurence Kressel, Multnomah County Counsel, Portland, filed the brief for respondent Multnomah County.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiffs in this declaratory judgment action challenge the constitutionality of Oregon Laws 1987, chapter 818, section 3, which provides, in pertinent part:

> "Notwithstanding any other provision [ORS chapter 199] or ORS chapter 222, territory annexed or transferred to a city or district by a minor boundary change approved by a boundary commission's final order adopted after January 1, 1985, but before the effective date of this 1987 Act shall be in the annexing city or district by operation of this 1987 Act commencing upon the effective date of the boundary commission's final order."[1]

The trial court held that the statute is constitutional, and plaintiffs appeal. We affirm.

Section 3 was enacted in apparent response to our decision in *Mid-County Future Alt. v. Port. Metro. Area LGBC*, 82 Or App 193, 728 P2d 63 (1986), *modified* 83 Or App 552, 733 P2d 451, *rev dismissed* 304 Or 89, 742 P2d 47 (1987). We held there that the so-called "triple majority" annexation procedure of ORS 199.490[2] and ORS 199.495 violated the equal privileges and immunities requirement of Oregon Constitution, Article I, section 20, because it allowed annexations with the consent of landowners in the affected areas and did not give nonlandowners the opportunity to consent or vote.

Plaintiffs argue that section 3 suffers from the same defect, because some of the annexations that it validates were initiated through the triple majority procedure. Therefore, plaintiffs contend, the statute offends Article I, section 20, and the Equal Protection Clause of the Fourteenth Amendment. They also argue that section 3 is contrary to the Home Rule Amendment, Oregon Constitution, Article XI, section 2, because it changes city boundaries and therefore constitutes a state legislative amendment of city charters.

---

[1] The section was codified as ORS 199.534. However, the codified version erroneously substituted the words "by operation of ORS 198.855, 199.490, 199.531, 199.534, 222.120 and 222.170 to 222.177" for the words "by operation of this 1987 Act" in the enacted version. The language enacted by the legislature, of course, prevails. We will refer to the challenged statute as "section three."

[2] ORS 199.490 was later amended by Or Laws 1987, ch 818, § 6. The amendment is not relevant here.

■ In *Donaldson v. Lane County Local Govt. Bdry. Comm.,* 93 Or App 280, 287-88, 761 P2d 1349, *rev den* 307 Or 245 (1988), we rejected a virtually identical home rule argument and held that statutory provisions that affect city boundaries are consistent with Article XI, section 2, at least with regard to cities whose charters do not describe their boundaries. The charters of the two cities involved in this case do not do so. Plaintiffs suggest that *Donaldson* was wrongly decided. We disagree.

■ Plaintiffs argue that the statute violates Article I, section 20, and the Fourteenth Amendment.[3] However, the statute on its face does not violate those constitutional provisions, because it grants no one the privilege of franchise or consent and it creates no classifications. The essence of plaintiffs' arguments is that section 3 is tainted with the constitutional infirmity of the underlying annexation procedures that it purports to cure and does by "indirection" what the triple majority statutes did directly. Plaintiffs argue that a boundary commission's approval of an annexation cannot alter the fact that other procedural stages leading to the annexation were constitutionally defective and that section 3 cannot validate the end result of the defective process by singling out one of its stages—the commission's final order—as the sole effective event.

However, as suggested by the Supreme Court in *Mid-County Future Alt. v. Port. Metro. Area LGBC, supra,* the passage of section 3 rendered moot the issue of constitutionality of the triple majority statutes.

> "These annexations no longer depend for validity on the constitutionality of ORS 199.495(1) as it relates to annexations pursuant to ORS 199.490(2). The territory in dispute has been annexed by another means, legislative command." 304 Or at 92.

In other words, section 3 became the operative authority for the annexations that it addresses, independent of the triple majority statutes or of any others that might have been

---

[3] We assume the correctness of our holding in *Mid-County Future Alt. v. Port. Metro. Area LGBC, supra,* that the triple majority procedure was unconstitutional. The Supreme Court dismissed the petition for review as moot, "[w]ithout expressing an opinion on the merits." 304 Or at 92.

involved in the process before the section was enacted. Therefore, any constitutional problems with other statutes became irrelevant to the validity of the annexations accomplished by the adoption of section 3.

Section 3 provides that the annexations to which it relates are effective "by operation of this 1987 Act." It also states that its provisions apply, notwithstanding any other provisions of ORS chapter 199. The legislature thus made clear that section 3 is an independent source of validity for the annexations that it covers. We hold that section 3 is constitutional.[4]

Affirmed.

---

[4] Plaintiffs suggest that there may be an Oregon constitutional right to vote on annexations. They say, however, that that question "is beside the point in this case, as such a right is granted by statute." No such right is granted by section 3 and, by its terms, it applies, notwithstanding the provisions of ORS chapter 199, which plaintiffs identify as the source of electoral rights.